UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MAURILLO VARGAS JUAREZ, | No. CV 10-00435-VBK |
| Plaintiff, | MEMORANDUM OPINION |
| | AND ORDER |
| v. | |
| | (Social Security Case) |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social | |
| Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.    Whether the Administrative Law Judge ("ALJ") erred in the

1   assessment of Plaintiff's physical residual functional
2   capacity;
3   2.   Whether the ALJ erred in finding that Plaintiff did not have
4   a "severe" mental impairment; and
5   3.   Whether the ALJ erred in the credibility findings.
6   (JS at 2-3.)

7

8   This Memorandum Opinion will constitute the Court's findings of
9   fact and conclusions of law.  After reviewing the matter, the Court
10  concludes that for the reasons set forth, the decision of the
11  Commissioner must be reversed.

12

13   I

14  **THE ALJ ERRED IN REJECTING THE RESIDUAL FUNCTIONAL CAPACITY**

15  **ASSESSMENT OF PLAINTIFF'S TREATING PHYSICIAN**

16  **WITHOUT PROVIDING SPECIFIC AND LEGITIMATE REASONS**

17

18  **A.   Introduction**.

19  Plaintiff's treating physician, Dr. Capen, is an orthopedic
20  surgeon.  Plaintiff was first evaluated by Dr. Capen on October 10,
21  2006, based on injuries Plaintiff sustained during industrial
22  accidents connected to his work as a laborer. (AR 210-226.)  These
23  injuries were sustained from accidents which occurred on May 30, 2002;
24  June 20, 2005; February 28, 2006; and March 6, 2006. (AR 215-217.)
25  Plaintiff treated with Dr. Capen, or another physician in his office
26  (Dr. Jarminski) until December 11, 2007. (AR 184-206, 394-414.)  In
27  Dr. Capen's report of December 11, 2007, he diagnosed Plaintiff with
28  left shoulder impingement; lumbar sprain - strain syndrome; L4-5 disc

2

protrusion with annular tear; and L5-S1 right-sided radiculopathy per EMG. (AR 396.)  On April 30, 2008, Dr. Capen provided the following exertional limitations: Plaintiff could occasionally lift and carry 20 pounds, and frequently lift and carry less than ten pounds.[1] (AR 393.)

Plaintiff was also seen in a one-time consultative examination performed at the request of the Department of Social Services by orthopedist Dr. Bleecker. (AR 335-338.)  After Dr. Bleecker's examination of May 15, 2007, he diagnosed Plaintiff with impingement syndrome left shoulder; and, degenerative disc disease lumbar spine. He rendered an impression that Plaintiff can lift 25 pounds occasionally, and ten pounds frequently. (AR 338.)

Dr. Geiger, a neurologist, examined Plaintiff at the request of Dr. Capen on February 8, 2007. (AR 156-182.)  Dr. Geiger reviewed extensive medical treatment records, but it is apparent that his examination was not done for the purpose of testing Plaintiff's exertional abilities.  Indeed, Dr. Geiger rendered no opinion in that regard.

Finally, the State Agency physician, Dr. Halpern, completed a Physical Residual Functional Capacity Assessment on May 25, 2007 (AR 347-352), and concluded that Plaintiff could occasionally lift 20 pounds, and frequently could lift ten pounds. (AR 348.)  Dr. Halpern, however, did not indicate what records she may have reviewed in coming to these conclusions.

The ALJ assessed that Plaintiff was capable of light exertional level work, as defined in 20 C.F.R. §404.1567(b). (AR 16.)  According to the definitions provided in that regulation, "light" work entails

---

[1]    The remainder of the exertional limitations are not relevant to this discussion.

3

1   the capacity to lift no more than 20 pounds at a time with frequent

2   lifting or carrying of objects weighing up to ten pounds.

3       In reaching his assessment, the ALJ found that Plaintiff's

4   residual functional capacity ("RFC") is "generally consistent with the

5   May 2007 report of consultative examiner Dr. H. Harlan Bleecker, ..."

6   (AR 17.)  He also found it to be generally consistent with the May

7   2007 report of the non-examining medical consultant, Dr. Halpern.

8   (Id.)  Finally, he found that his RFC assessment was also "generally

9   consistent" with the April 2008 report of Dr. Capen. (Id.)   While

10  acknowledging Dr. Capen's opinion that Plaintiff could lift or carry

11  less than ten pounds frequently, he rejected that limitation for the

12  following reasons:

13      "... because there is no evidence that supports this level

14      of restriction, this opinion is not compatible with the May

15      2000 opinions of the consultative examiner and the medical

16      consultant (exhibit citations omitted), and this opinion is

17      not compatible with the medical record as a whole (exhibit

18      citations omitted)."

19  (AR 17.)

20

21  **B.   <u>Analysis</u>.**

22      In the hierarchy of the evaluation of physicians' opinions,

23  Social Security analysis gives greatest weight, generally, to that of

24  the treating physician.   If the treating physician's opinion is

25  controverted by that of another examining physician, an ALJ may only

26  reject the treating physician's opinion by setting forth "specific and

27  legitimate" reasons based on substantial evidence in the record.   <u>See</u>

28

4

1  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[2]

2        It is the Court's task, then, to analyze whether the reasons

3  provided by the ALJ, and those reasons only[3] provide substantial

4  evidence to support the ALJ's conclusion.

5        The first reason provided by the ALJ is that Dr. Capen's opinion

6  provides "no evidence that supports [his] level of restriction."  One

7  must be mindful, in reviewing reasons provided by the ALJ such as

8  this, that the main contradiction between Dr. Capen's opinion and the

9  other physicians' opinions is that Dr. Capen assessed that Plaintiff

10  could lift and carry <u>less than</u> ten pounds frequently, while the other

11  physicians opined that Plaintiff could lift up to ten pounds

12  frequently.  This would appear to be a fine line, but has significant

13  legal ramifications because it sets up a demarcation between light

14  exertional work and work which requires lesser exertional ability,

15  such as sedentary work.  But is there "no evidence" that supports Dr.

16  Capen's conclusions?  This is clearly not the case.  Dr. Capen's

17  diagnostic reports indicate, for example, a significant disc

18  protrusion of 5-5 millimeters at L4-5 (AR 153), and an abnormal EMG

19  study consistent with right L5-S1 radiculopathy. (AR 286.)  Dr. Capen

20  also found abnormal objective physical examination findings, such as

21

22            [2]     The Commissioner makes a somewhat surprising argument, in
23  passing, that while he acknowledges the holding of <u>Lester</u>, and many
    cases which establish the same principle, he also believes that, "to
24  the extent the Ninth Circuit's judicially-created standard exceeds the
    requirements set forth by Congress and by the Commissioner at the
25  behest of Congress, it would appear to be improper." (JS at 6.)  This
    argument would appear to be in the form of an aside, as the
26  Commissioner analyzes Plaintiff's case in light of the "specific and
    legitimate reasons" principles annunciated in <u>Lester</u> and subsequent
27  cases.

28            [3]     <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).

tenderness and limited range of motion of the lumbar spine, positive straight leg raising bilaterally, and positive impingement maneuver, positive Neer's test, positive Hawkin's maneuver, and restriction of motion in the left shoulder.   There is simply no way that these findings constitute "no evidence" supporting Dr. Capen's diagnostic conclusions especially, when, as the Court has noted, the distinction between Dr. Capen's findings that Plaintiff could lift less than ten pounds frequently, and the other physicians' findings that Plaintiff could lift up to ten pounds frequently, would appear to be very slight from a medical point of view.   Certainly, the Court cannot find that the ALJ's conclusion that there is no evidence supporting the level of restrictions assessed by Dr. Capen constitutes a specific and legitimate finding.

The ALJ also rejected Dr. Capen's opinion because it was not compatible with the opinions of the consultative examiner and the medical consultant.   Again, this is not a specific and legitimate reason.   If it were, then the citation, per se, of any inconsistency between a treating physician's conclusions and the conclusions of consultative and/or non-examining physicians would amount to specific and legitimate reasons.   It is not the citation to such differences, but the explanation of why the differences are justified, and that the treating physician's opinion should be rejected, that amounts to a specific and legitimate reason.   The Commissioner cites Morgan v. Social Security Administration, 169 F.3d 595, 602-603 (9th Cir. 1999) for the proposition that the mere fact of the inconsistency between the report of a treating physician and that of a consultative examiner and a non-examining physician is sufficient basis upon which to reject the opinion of the treating physician.   This in not, however, a

1   correct reading of the holding in <u>Morgan</u>.  In that case, the appellate

2   court went through a recital of the evidence, and particularly cited

3   numerous instances in which the opinion of the treating physician was

4   not supported by objective evidence. (See <u>Morgan</u>, 169 F.3d at 600-

5   602.)  The Commissioner's citation to <u>Batson v. Commissioner of Social</u>

6   <u>Security</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) is no more availing.

7   <u>Batson</u> did not hold that the mere fact of a discrepancy between

8   treating and consultative examiners' opinions constituted specific and

9   legitimate reasons to reject the former; rather, in <u>Batson</u>, the

10  appellate court upheld the discounting of the views of the treating

11  physician because the opinion was in the form of a checklist, did not

12  have supporting objective evidence, was contradicted by other

13  statements and assessments of the claimants' medical condition, and

14  was based on the claimants' subjective descriptions of pain. (<u>Id</u>. at

15  1194.)

16       The third reason cited by the ALJ, that the treating physician's

17  opinion was not compatible with the medical record as a whole, is one

18  which is often cited by ALJs in their opinions, and is normally found

19  to be insufficient to constitute a specific and legitimate reason.

20       Based on the foregoing, the Court finds merit in Plaintiff's

21  first issue, which will require remand so that Dr. Capen's opinion may

22  be assessed pursuant to proper legal standards.

23

24                                  **II**

25           **THE ALJ ERRED IN ASSESSING PLAINTIFF'S MENTAL STATE**

26       The ALJ, at Step Two of the sequential evaluation process, found

27  that Plaintiff has no severe mental impairment or combination of

28  mental impairments. (AR 15.)  The ALJ found that the finding of no

1    severe  mental  impairment  was  substantiated  by  the  psychiatric

2    diagnosis of Dr. Scheinbaum conducted on August 31, 2006, which found

3    that Plaintiff has no evidence of any significant psychiatric symptoms

4    to warrant a diagnosis on Axis I. (AR 251.)   It is curious to note

5    that Dr. Scheinbaum's report is not included in the Administrative

6    Record; rather, the ALJ seemed to form her opinion based upon a

7    summary of Dr. Scheinbaum's report contained in the extensive report

8    of Dr. Friedman, a psychiatrist who examined Plaintiff on March 15,

9    2007 at the request of Plaintiff's worker's compensation lawyer. (AR

10   236-263.)   Further, the ALJ selectively quoted from Dr. Friedman's

11   report, concluding that he found that Plaintiff is not precluded from

12   a psychiatric viewpoint from performing his usual work. (AR 15.)

13       As to the ALJ's reliance on Dr. Scheinbaum, the Court cannot

14   validate that based upon a summary of that report contained in another

15   psychiatrist's report.   Further, Dr. Friedman, who apparently did

16   examine Dr. Scheinbaum's report, noted that it failed to provide any

17   results of psychological testing.   The lack of objective testing is

18   often  cited  as  a  basis  to  reject  the  opinion  of  a  medical

19   professional.   Moreover, Dr. Friedman's report contains a detailed

20   critique by both himself and by Dr. Servedio, who also signed his

21   report, of Dr. Scheinbaum's conclusions.   None of this, however, is

22   addressed by the ALJ, who simply seemed to accept the summary of Dr.

23   Scheinbaum's apparent conclusion that Plaintiff has no psychiatric

24   diagnosis. Moreover, as Plaintiff's counsel aptly points out, the ALJ

25   selectively quoted from the opinion of Dr. Friedman, but omitted any

26   discussion of Dr. Friedman's conclusion that Plaintiff was totally

27   disabled from a psychiatric viewpoint. (AR 261.)   Dr. Friedman found

28   that Plaintiff has slight to moderate impairment in his ability to

maintain a work pace appropriate to given work.  This conclusion, which also would have significant impact on Plaintiff's vocational abilities if it were accepted, was seemingly ignored by the ALJ.

Finally, the ALJ's reliance upon the psychiatric evaluation conducted by Dr. Ritvo on May 18, 2007 at the request of the Department of Social Services, is also unsupportable, because Dr. Ritvo apparently did nothing more than conduct a mental status examination without doing any psychological testing whatsoever. (AR 341-345.)

For the foregoing reasons, on remand, the issue of whether Plaintiff has a severe mental impairment will be properly reevaluated.

## III

### THE ALJ ERRED IN THE CREDIBILITY FINDINGS

The ALJ rejected Plaintiff's credibility, finding that his assertions were internally inconsistent and incompatible with the evidence of record, that although he contends he lacks the ability to work, he has reported that he runs errands without assistance, engages in walking on a daily basis, and performs household chores. Furthermore, the ALJ found there is no evidence to support the level of restrictions claimed by Plaintiff because they are inconsistent with medical evidence.  The ALJ finally detracted from Plaintiff's credibility because of his past history of alcoholism. (AR 17.)

It is well established that an ALJ may reject a plaintiff's testimony regarding severity of pain or other symptoms if, after a claimant produces objective medical evidence of an impairment or impairments sufficient to cause such pain, findings are made which set forth specific, clear and convincing reasons for rejecting

credibility.

Here, Plaintiff certainly produced objective medical evidence which could reasonably be expected to produce the symptoms of which he complained. The reasons for rejecting his testimony, however, are insufficient. The fact that Plaintiff is able to run errands, or walk on a daily basis, or do some household chores is not related to the level of exertion required on a sustained basis to perform productive work. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The finding that Plaintiff's credibility is weakened by a past history of alcoholism is little more than a non sequitur, and the Court will not devote any attention to it, other than indicating it will be rejected, and will not be cited as a reason for detracting from credibility on remand, unless specific and clear reasons are set forth which tie a past history of alcoholism to a present lack of credibility.

Finally, the ALJ's notation that Plaintiff's subjective claims are not compatible with "the medical record as a whole" has the same infirmity that the Court has previously noted because such a generic finding is not amenable to judicial review. With regard to the citation to specific opinions in the record, the Court has already addressed the limitations of those opinions as a basis upon which to rely in assessing Plaintiff's exertional capacities.

Plaintiff's credibility will be reassessed on remand pursuant to correct legal standards.

//

//

//

//

     For the foregoing reasons, this matter will be remanded for
further hearing consistent with this Memorandum Opinion.

     **IT IS SO ORDERED.**


DATED: February 9, 2011     /s/
                         VICTOR B. KENTON
                         UNITED STATES MAGISTRATE JUDGE